## Fleishon v. Zoning Board of Adjustment (No. 2)

*Eilberg, Meshon & Brener*, for appellant.

*Gordon Cavanaugh*, Assistant City Solicitor, and *David Berger*, City Solicitor, for zoning board of adjustment.

*Michael H. Egnal*, for intervening defendant.

REIMEL, J., February 7, 1958.—This is an appeal from a decision of the zoning board of adjustment granting permits for the erection of 10 four-family dwellings on a vacant lot located on the northeast side of Seventy-sixth Street, 289 feet, 10 inches, south of Woodcrest Avenue, in a "D" residential district. Variances were granted from the front yard, rear yard and open area requirements of the Zoning Ordinance, together with variances for accessory parking use.

In a prior application before the zoning board of adjustment for the use of this vacant ground, appli-

cant proposed to erect two-story dwellings containing 54 family dwelling units. The permits, then issued upon the ground that the proposed structures met all the technical requirements for a "D" residential district, were revoked by President Judge Oliver in an opinion reported in 6 D. & C. 2d 337, which was affirmed by the Supreme Court and reported in 382 Pa. 295. Thereafter, applicant filed the present petition, together with a revised building plan which was prepared specifically to obviate the elements of danger pointed out in President Judge Oliver's opinion. After two public hearings and a personal inspection of the land in question by two board members, the zoning board of adjustment granted the permits. Appellant, a protesting neighbor, filed an appeal, by writ of certiorari, to challenge the issuance of the aforesaid permits. Petitioner was permitted to join in this action as an intervening defendant.

The lot in question is a large interior, irregularly shaped piece of ground approximately 600 feet long from west to east with a width of about 200 feet directly along a driveway at the rear of seven houses, which front on Seventy-sixth Street, at its western end. From there it tapers off to a width of about 113 feet at its eastern end. This lot is bounded on the north, east and south sides by row dwellings facing respectively on Woodcrest Avenue, Seventy-fifth Street and Malvern Avenue, and on the west, with the exception of 64 feet, by row houses fronting on Seventy-sixth Street.

The proposed multiple family dwellings are permitted as a matter of right. They will conform to all of the area requirements relating to occupied area, open area, building setback line, side yard, open court and height restrictions for "D" residential districts as provided for under section 14-207(2) (a), (b), (c), (e) and (3). The occupied area is approximately 23

percent, whereas under section 14-207(2)(a), not more than 70 percent of the lot areas shall be occupied by buildings on intermediate lots and 80 percent of the lot area on corner lots. The open area is 77 percent to 80 percent, whereas under section 14-207(2)(b), the open area shall be not less than 30 percent of the lot area on intermediate lots, and 20 percent on corner lots, and shall consist of at least the required minimum front and rear yards in all cases. The present petition is within the restrictions of the zoning requirements for "D" residential districts in all respects with the exception of the fact that each structure will not have its own front yard, rear yard and open area as defined under section 14-102(29).

The zoning board of adjustment considered this matter as a request for a variance. In order to obtain a variance, a petitioner must prove: (1) The variance will not be contrary to the public interest; and (2) unnecessary hardship will result if it is not granted: Fagan v. Zoning Board of Adjustment, 389 Pa. 99. The board, upon finding the above elements, granted the requested variances. This finding can only be set aside if the board manifestly and flagrantly abused its discretion.

The case at bar reveals an irregular interior lot with a limited street frontage. Its creation is not our concern, but its use in the general plan of urban development is our concern. The zoning board found that the application is within "D" residential requirements in other enumerated respects, that the lot cannot be used for residential purposes in strict compliance with the Zoning Ordinance and that it is physically impossible to make practical use of the remainder of the lot if compliance with the Zoning Ordinance is required. The record discloses special conditions which create practical difficulties of proper development and use of this land. Moreover, these practical difficulties

would evolve upon any owner thereof. Due to the irregular shape of this interior lot, any owner would face practical difficulties in using the land in strict compliance with the provisions of the Zoning Ordinance applicable thereto. Therefore, this is not a proper situation for the application of any theory of self-created hardship.

Appellant contends that since an alternate plan submitted by the protestants was "feasible", and that construction in conformity therewith would not require a variance, there is no need for the allowance of a variance. Unnecessary hardship may result even though other uses, not desired by the property owner, may properly be made within the requirements of the Zoning Ordinance. The availability of other uses within the zoning regulations, in some cases, should be considered in determining whether "unnecessary hardship", as construed by the courts, exists. However, the owner of the property has the right to decide the use which he desires, subject to law, and the board has no authority to suggest uses: Seitchik v. Philadelphia Zoning Board of Adjustment, 13 D. & C. 2d 43. If the desired use requires a variance, and the necessary elements for the granting thereof are present, the issuance of permits thereupon is proper.

This court recognizes that "unnecessary hardship" can result in the use of an irregular shaped interior lot of the type under consideration, based principally upon the shape of the lot. The board adequately considered the problem before granting the variances, and we find sufficient evidence in the record to support its action. Moreover, President Judge Oliver observed in Fleishon v. Zoning Board of Adjustment, 6 D. & C. 2d 337, 349: "Obviously, the owner has a valuable piece of land and should be permitted to develop it. . . ." He also observed that application for variance was the proper remedy and he pointed out a fact for consider-

ation in eliminating the elements of danger. The present application exceeds the suggested recommendation and is more desirable from a city planning point of view.

Appellant also contends that the vote of the board was improper. Of the six board members, four voted affirmatively, one voted negatively and one did not vote. Since one of the members, who voted in the affirmative, was not a member of the board at the time of the first hearing, being newly appointed thereto, and since said member was not in attendance at the second hearing, appellant contends that the concurring vote of four members of the board required by the Act of May 6, 1929, P. L. 1551, sec. 8, 53 PS §14759, was not properly obtained.

The zoning board of adjustment is an expert administrative tribunal established to make fair and expeditious decisions of questions arising from the administration of the city's zoning laws. The board operates as a panel whose members are fully cognizant with the problems in matters that come before them. Before reaching any decision, the members of the board, after public hearings, meet in executive sessions and have full discussions of the problems raised in individual cases. Thus, in addition to their own knowledge, they have the benefit of the observations of their fellow board members.

The basis on which a member casts his vote is not limited to testimony heard from witnesses. At the executive session when the vote is cast, the board members have before them the application for the permit in question, all photographs and exhibits produced at the hearing, the report of the board's inspector as to the nature of the premises and neighborhood involved, and his own seasoned knowledge of zoning law. The application sets forth the use applied for, the dimensions of any structure, the zoning designation of the

property and is accompanied by a plot plan of the proposed development. In addition to the foregoing, the appeal form used to bring the action of the Zoning Administration of the Department of Licenses and Inspections before the board sets forth the legal contentions of appellant. All of these matters are sufficient to fully inform any member of the board, not present at the hearing, so that his vote is an intelligent decision based on the record. Therefore, the requirement that a board member must be in attendance at the hearing in order to be eligible to vote would be impracticable and merely serve to obstruct the proper expeditious disposition of zoning cases. The vote of a board member, who has been fully apprised of the issues involved in the application under consideration, is proper.

Section 14-1803(3) of the Zoning Ordinance provides: "Except as otherwise provided in the Charter, the provision of this Title constitute the exclusive law with regard to zoning in Philadelphia. Accordingly the Act of May 11, 1915, P. L. 285, . . :, and the Act of May 6, 1929, P. L. 1551, . . . are hereby superseded, except that the following provisions of Section 8 of the Act of May 6, 1929, P. L. 1551, pertaining to appeals from decisions of the Zoning Board of Adjustment are expressly saved . . ."

None of the provisions saved provides for the number of concurring votes required to grant a variance. Therefore, in the absence of statutory limitation, the board can perform its functions in the same manner as other administrative agencies wherein the action of a majority constitutes the action of the board.

The board concluded that the proposed tertiary and cul-de-sac street complies with section 14-2102(s) (.5) and (.7) of the Zoning Ordinance, and that the width of the proposed tertiary street is within the provisions of section 14-2104(5)(a)(.3). Appellant maintains that the zoning board does not have the authority to

allow a tertiary residential street, that such an allowance is solely within the jurisdiction of the city planning commission and city council. This position is based upon the mention of a tertiary residential street in chapter 14-2100 et seq. However, section 14-2103-(4) provides: "The terms and provisions of this chapter shall not apply to:

"(c) Land subdivision plans which pertain to land abutting one or more legally opened streets shown on the City plan, provided the least dimension of said land does not exceed 300 feet and the entire tract does not contain more than 15 acres."

The land herein involved abuts on Seventy-sixth Street, a legally opened street shown on the city plan, its least dimension does not exceed 300 feet and the entire tract comprises only 89,000 square feet. Therefore, the land subdivision chapter is not applicable.

The zoning board, in its consideration of the present petitions which contained a proposal for a tertiary residential and cul-de-sac street, properly made reference to the provisions of the Zoning Ordinance which referred to said streets in its determination of the over-all problem of the issuance of permits of variance.

The proposed tertiary and cul-de-sac street will provide a primary and direct means of access to the 10 multiple dwelling units. Any use of the supplementary driveways will be incidental. As such, the placing of vastly increased burdens on the easements granted to owners of the smaller parcels of land is not remotely foreseeable. Likewise, the larger parcel of land which had no easement in the prior application now has a right-of-way over the proposed street. The use of the supplemental driveways by the occupants of these units is not required. Therefore the supplementary driveways would not be subjected to an unusually increased burden which could create traffic, health, fire or safety hazards.

A variance is also required for a private accessory outdoor parking area by section 14-1401. Of the 40 units involved, 24 are provided with separate garage facilities. The remaining 16 units, for which the accessory off-street parking is contemplated, have an area of 8,000 square feet provided for such use. Brief calculations will show that this area far exceeds the minimum area requirements. Likewise, the proposed driveway, ranging from 22 to 24 feet in width, provides adequate access to said parking area. Such width will accommodate two-way traffic of vehicles.

The evidence reveals inquiry by the board into the issue of accessory parking. This inquiry together with the building plan constitutes a sufficient basis for the board's supplemental finding. The board's conclusion that the application complies with section 14-1401 is sufficient. It need not refer specifically to the subdivisions thereof nor the amendments thereto. The board's reference to the provisions of section 14-1402 dealing with off-street parking in its conclusions of law obviously meant section 14-1401 wherein said provisions are contained.

There being no merit to the other contentions of applicant, it is clear that the zoning board of adjustment did not manifestly and flagrantly abuse its discretion when it determined that there was unnecessary hardship that requires the issuance of a variance to applicant, and that such request is not contrary to the public interest.

### Order

And now, to wit, February 7, 1958, the appeal of Rhoda Fleishon from the decision of the zoning board of adjustment is dismissed.